UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **Andrea May Gummo, individually and on behalf or her minor child, Maykayla Deeanna Gummo,** ) ) ) ) **Plaintiff,** ) **v.** ) ) **Robert Lee Ward, Shelaena Rhea Ward,** ) **Ward Construction, Robert Lee Ward** ) **d/b/a Ward Construction, and Shelaena** ) **Rhea Ward d/b/a Ward Construction,** ) ) **Defendants.** ) | No. 2:12-00060 Judge Sharp |

## **MEMORANDUM**

Pending before the Court is Defendants' fully-briefed Motion for Summary Judgment and to Strike Opinion Testimony of Plaintiff's Expert (Docket No. 69).[1] For the reasons that follow, the Motion for Summary Judgment will be granted in part and denied in part. The Motion to Strike will be denied, but, if necessary, the Court will hold a <u>Daubert</u> hearing[2] (outside the presence of the jury) in relation to allowing the proffered expert to testify.

### **I. FACTUAL BACKGROUND**

This is a personal injury action that arose after two fifteen-year old girls, Maykayla Deeanna Gummo and Kaitlin Ward were injured in an accident involving a 2007 Honda TRX 420 TM/FX four wheel all-terrain vehicle ("ATV"). At the time of the accident, which occurred at approximately 11:00 p.m. on January 27, 2012, Maykayla was driving the ATV on a public roadway

---

[1] On October 28, 2014, while this opinion was in draft, the parties filed supplemental brief. Those briefs have been considered by the Court.

[2] <u>Daubert v. Merell Dow Pharm</u>, 509 U.S. 579 (1993).

1

that was wet. For reason which are not definitively answered by the record, as Maykayla drove the ATV down a hill and into a curve, it went off the road. The vehicle plunged approximately 50' and landed in a creek bed.

Maykayala suffered significant injuries in the accident. Those injuries included a fractured femur, seven fractured vertebrae, and amputation of her left arm above the elbow.

At the time of the accident, Maykayla and Kaitlin were following another ATV operated by Tye Ward, age seventeen, who had just dropped his sixteen year old girlfriend Sasha Biggs off at her home. Tye is the nephew of Defendant Robert Lee Ward who is also Kaitlin's grandfather. Mr. Ward is married to Defendant Shelaena Rhea Ward.

On the night of the accident, Maykayla and Kaitlin intended to spend the night at the Ward residence. Sasha was visiting Tye who lived in the house.

As the hour became late, Tye asked Mrs. Ward if he could take Sasha home in his uncle's SUV, as he had done on numerous occasions in the past. Mrs. Ward refused and told Tye to take her home on one of the ATVs. Kaitlin and Maykayla either received permission or were instructed by Mrs. Ward to follow Tye and then return straight home.

The two ATVs utilized on the night of the accident were bought by Mr. Ward for use in his construction business, Ward Construction. After use in Louisiana, Mr. Ward moved the ATVs to his farm in Tennessee.

At least for the first year after purchase, Robert Ward d/b/a Ward Construction treated the ATV involved in the accident as an asset of the sole proprietorship's construction business for tax purposes. He also depreciated the ATV and deducted maintenance expenses on his tax returns.

Mr. Ward testified that he only performed maintenance on the ATVs when a service light

indicated the need, but there was no maintenance light on the ATV involved in the accident. Only one service record has been produced for that ATV since it was moved to Tennessee. That record indicates maintenance work was performed at Paul's Repair shop in Westmoreland, Tennessee in July 2010 (approximately sixteen months before the accident). Ward Construction paid for the maintenance, although Mrs. Ward claims she probably reimbursed that entity for the services performed on the ATV.

There is some evidence that prior to the accident there may have been problems with the subject ATV. The brakes were said to "squeak" and may have locked up on more than one occasion.

When the Wards married, they entered into a pre-nuptial agreement whereby Mr. Ward maintained sole ownership of "the entire business." Nevertheless, Defendants claim that Mrs. Ward bought or was given the ATV in question. However, there is no bill of sale, contract, transfer of title or any other document showing that ownership of the subject ATV was ever sold, transferred or gifted to Mrs. Ward.

As noted, Tye lived in the Ward residence. He worked for Ward Construction every day after school. He used the ATVs to ride out and mend fences on the Ward farm, and testified in his deposition that he sometimes had difficulty shifting gears.

Prior to the incident in question, Tye had been allowed by Mr. Ward to use the ATVs on public roads to drive Sasha home. Defendants claim, however, that Tye had to get Mrs. Ward's permission whenever he used what they claim to be her ATV. Also according to Defendants, Tye was supposed to use the most direct route both to and from Sasha's home.

Returning to the night in question, Mr. Ward was away on business in North Dakota. Through a phone conversation with his wife earlier in the day, Mr. Ward knew that Katlin, Sasha

and Maykayla were coming to the house and that Kaitlin and Maykayla intended to spend the night.

Mrs. Ward did not specify that night who should drive which of the three ATVs and it was by happenstance that Katilin and Maykyla chose the 2007 Honda TRX 420 TM/FX. That vehicle was age-limited by the manufacturer to drivers sixteen years of age and older.

Plaintiff claims that Mrs. Ward did not specify who should drive. Defendants insist that Mrs. Ward instructed Kaitlan to drive and it appears undisputed that Maykayla did not ask to drive the ATV. Mrs. Ward had no knowledge of Maykalya's competence as an ATV driver, had never seen her drive an ATV, and had only seen her on an ATV as a passenger.

The trip to Sasha's house was apparently uneventful. Because she was "freezing," however, Kaitlin asked MayKayla to drive back. Maykalya had never driven (or been a passenger on) an ATV on a paved road. She allegedly was unaware that the ATV in question had a foot brake.

In contravention of the standing rule, Tye "took off" on a longer route home with Maykayla in pursuit. The accident happened when, according to Maykayla, the steering locked up.

Mrs. Ward learned of the accident through a phone call from Shelaena's grandmother, approximately thirty minutes after the minors had left the house. The first time Ms. Gummo saw her daughter after the accident was at Vanderbilt University Medical Center in Nashville, Tennessee.

## II. MOTION FOR SUMMARY JUDGMENT

Defendants have raised a number of arguments in support of their Motion for Summary Judgment.[3] The Court considers the arguments roughly in the order presented by Defendant.

### A. Negligent Entrustment Claim as to Both Mr. and Mrs. Ward

Tennessee recognizes the tort of negligent entrustment as found in section 390 of the

---

[3] The standards governing summary judgment are well-established and need not be reiterated here.

Restatement of Torts. West v. East Tenn. Pioneer Oil Co. d/b/a Exxon Convenience Store, 172 S.W.3d 545, 554 (Tenn. 2005) . That section provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965).

"Tennessee courts have articulated four elements that must be proven before a plaintiff can recover on the tort of negligent entrustment. The plaintiff must demonstrate: '(1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another.'" Privette v. CSX Trans., Inc., 79 F. App'x 879, 891 (6th Cir. 2003) (quoting Nichols v. Atnip, 844 S.W.2d 655, 659 (Tenn. Ct. App. 1992)).

Although it is a close question, the Court will allow the negligent entrustment claim against Mr. Ward to go forward. On the one hand, Plaintiff argues that "[t]he ATVs were bought, maintained and used by Robert Ward" in his construction business, that Mr. Ward "*entrusted* the ATVs for use on the farm for both business and family purposes," and that "[t]he decision to entrust the ATVs for use by Tye Ward and others, including Sheleana Ward was *in the conduct* of d/b/a Ward Construction's business." (Docket No. 74 at 9, emphasis in original). Even if all of that is true, it says nothing about the entrustment of the ATV by Mrs. Ward on the night in question to either Kaitlin or Maykayla and the Tennessee Supreme Court has made clear that a distinction must be drawn between negligent entrustment and vicariously liability. In West, the Tennessee Supreme Court explained:

> Liability for negligent entrustment is founded upon the supplier's direct negligence in entrusting the chattel to an incompetent user. Vicarious liability, on the other hand, relies upon the supplier's right to control the chattel at the time the entrustee misuses it. . . . A negligent entrustment is committed at the moment when control of a chattel is relinquished by an entrustor to an incompetent user. . . . Control therefore need only exist at the time of the entrustment for a prima facie case of negligent entrustment.

172 S.W.3d 545, 555 (internal citations omitted).

Still, "[t]he focus of the tort of negligent entrustment is 'the degree of knowledge the supplier of the chattel has or should have concerning the entrustee's propensity to use the chattel in an improper or dangerous fashion.'" Privette, 79 F. App'x 879 at 892 (quoting Rains v. Bend of the River, 2003 WL 21766247, at *11 (Tenn. Ct. App. July 31, 2003)). Plaintiffs have presented evidence from which a jury could conclude that Mr. Ward bought, maintained and used the ATVs, that he had a practice of allowing minors to drive the ATVs on public roads, that Sasha had routinely been taken home from the Wards's residence on one of those ATVs, that he knew both Kaitlin and Maykayla were staying at the house that night, that he entrusted the ATVs and their use to Mrs. Ward, and that she, in turn, allowed the ATVs to be operated on public roads by minors, all of which may have been in keeping with Mr. Ward's allowance of minors to use the ATVs.

As for Mrs. Ward, summary judgment is unwarranted on the negligent entrustment claim, notwithstanding her assertion that there is no proof that (1) Shelaena was an incompetent ATV driver; (2) even had she had entrusted the ATV to Maykayla, there is no proof that Maykayla was an incompetent driver; and (3) there is no proof that incompetence was the cause of the wreck. Those arguments are non-starters not only because the ATV was age restricted by the manufacturer, but also because it is illegal to drive without a license (which neither Kaitlin or Maykayla had), and it is a violation of law to operate ATVs on public thoroughfares. Clearly it will be for a jury to

decide whether Mrs. Ward negligently entrusted the ATVs to underage operators on the night in question.

**B. Negligent Supervision Claim as to Both Mr. and Mrs. Ward**

Relying upon Shorter v. McManus, 1997 WL 718972 (Tenn. Ct. App. Nov. 13, 1997) and its citation to Bocock v. Rose, 373 S.W.2d 441, 445 (Tenn. 1963), Defendants argue that Plaintiff cannot maintain a negligent supervision claim against either Mr. or Mrs. Ward. The Court disagrees with regard to that claim against Mrs. Ward.

In Shorter, the Tennessee Court of Appeals quoted Bocock, "the leading case on parental liability for negligent supervision" Shorter, 1997 WL 718972, at *5 for the elements of such a claim:

> We find and so hold parents may be held liable for the dangerous habits of their minor children causing injuries and damages to others, when, (1) the parent has the opportunity and ability to control the child, and (2) the parent has knowledge, or in the exercise of due care should have knowledge, of the child's habit, propensity or tendency to commit specific wrongful acts, and (3) the specific acts would normally be expected to cause injury to others, and (4) the parent fails to exercise reasonable means of controlling or restraining the child.

Bocock, 373 S.W.2d at 445. Based on that language, Defendants argue that the Wards cannot be liable because the parent-child relationship does not exist between them and Kaitlin or Maykayla, and there is no proof that either of the Wards had prior knowledge of specific wrongful acts by Maykayla, or that such acts would result in injury.

Shorter itself, however, states that "the Bocock analysis is better suited to cases involving parental liability for the intentional torts of their minor children," and "the distinction between intentional torts and negligence . . . is important[.]" Shorter, 1997 WL 718972, at *5. Here, the claim is for alleged negligence of a minor child and this Court believes it would be a mistake to read Tennessee law as limiting negligent supervision claims to parent-child relationships.

7

As Defendants note immediately after citing Shorter and Bocock, "'[t]he concept of duty involves the relationship between individuals which impose upon one person a legal obligation for another's benefit.'" (Docket No. 71 at 10, quoting, Atnip v. Nichols, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992)). According to the Tennessee Supreme Court, "public policy considerations favor imposing a duty to act for the protection of minors where such a duty might be absent when dealing with adults," and that court "ha[s] long recognized that, because of their immaturity and inexperience, a duty may exist towards minors where it might not exist towards adults." Biscan v. Brown, 160 S.W.3d 462, 480 (Tenn. 2005). This is the law in other jurisdictions as well. See Davis v. LeCuyer, 849 N.E.2d 750, 757 (Ind. App. 2006) ("there is a well-recognized duty in tort law that persons entrusted with children have a duty to supervise their charges" and that "duty exists whether or not the supervising party has agreed to watch over the child for some form of compensation"); Nunn v. Page, 594 S.E.2d 701, 703 (Ga. App. 2001) (citation omitted) ("'As a general rule, a person who undertakes the control and supervision of a child, even without compensation has the duty to use reasonable care to protect the child from injury'"); Gritzner v. Michael R., 598 N.W.2d 282, 288 (Wis. App. 1999) ("it [is] self-evident that an adult who voluntarily takes on the supervision, custody or control, even on a temporary basis, of a visiting child . . . stands in a special relationship to such child . . ."); Hill *ex rel.* Hill v. Herbert Hoover Boys Club, 990 S.W.2d 19, 22 (Mo. App. 1999) ("Missouri case law establishes that acceptance of the custody and control of a minor child creates a relationship sufficient to support a duty of care").

Although the Court is of the view that a negligent supervision claim may be maintained even in the absence of a parent-child relationship, the ability to maintain such a claim is cabined by the requirement that the adult sought to be held accountable "has an opportunity to and ability to control

8

the child." Bocock, 373 S.W.2d at 445. Here, the record is undisputed that Mr. Ward was in North Dakota at the time of the incident, and, therefore, he was not in a position to supervise the children in the household. See, Rice v. Elliott, 567 S.E.2d 721, 722 (Ga. App. 2002) (summary judgment appropriate on negligent supervision claim where parents were not at home at the time of an accident involving a inline skateboard ramp on their property, did not know neighbor's child was using the ramp, and there was no evidence that parents undertook any duty to supervised the child). In contrast, Mrs. Ward was in a position to supervise, and even took the affirmative step of allowing underage children to ride ATVs on a public roadway at night. From the evidence in the record, a reasonable jury could not find that Mr. Ward was guilty of negligent supervision but could find that Mrs. Ward was. Accordingly, summary judgment on this claim will only be granted as to Mr. Ward.

**C. Family Purpose Doctrine Claim as to Mr. Ward**

The family purpose doctrine "is a 'court created legal fiction' that employs agency principles to hold the owner of the vehicle vicariously liable." Starr v. Hill, 353 S.W.3d 478, 482 (Tenn. 2011). It "imposes vicarious liability on a head of the household for the negligent operation of a motor vehicle by a family member" and "is based on the theory that a family member who provides and maintains a vehicle for the pleasure or convenience of the family makes the vehicle's use his or her business, and that in using the vehicle, the family members are furthering the purpose for which it is maintained." Id.

"The family purpose doctrine is applicable when two requirements have been satisfied." Camper v. Minor, 915 S.W.2d 437, 447 (Tenn. 1996). "First, the head of the household must maintain an automobile for the purpose of providing pleasure or comfort for his or her family." Id. (citing Scates v. Sandefer, 44 S.W.2d 310 (1931)). "Second, the family purpose driver must have

9

been using the motor vehicle at the time of the injury 'in furtherance of that purpose with the permission, either expressed or implied, of the owner.'" Id. (quoting Redding v. Barber, 230 S.W.2d 202, 205 (Tenn. Ct. App. 1950). "The true test is whether the driver was engaged in the owner's business at the time of accident, with business here meaning the furnishing of pleasure to the owner's family." Thurmon v. Sellers, 62 S.W.3d 145, 157 (Tenn. Ct. App. 2001).

Defendants argue that the family purpose doctrine is inapplicable for three reason. Each of those reasons, however, assumes as undisputed certain facts, and "Tennessee courts have treated the application of the family purpose doctrine as a question for the trier of fact when the facts are disputed or subject to more than one interpretation[.]" Starr, 353 S.W.3d at 481.

First, Defendants assert that Mr. Ward was not the owner of the vehicle. This is a disputed issue of fact because the ATVs were purchased for use by Ward Construction, and no documentation has been presented that definitively shows the 2007 Honda TRX 420 TM/FX was transferred to Mrs. Ward.

Second, Defendants contend that Robert Ward was not the head of the household for purposes of the doctrine. More specifically, they point out that Mr. Ward did not have a family relationship with Maykayla or any duty to support her, and assert that he also has no duty to support his granddaughter, Kaitlin. That may be so, but it neglects to consider that Tye, a minor, is Mr. Ward's nephew and was living in the Ward's home. See, Starr, 353 S.W.3d at 486 ("in determining whether the owner of a vehicle is to be designated a head of the household for purposes of the family purpose doctrine, appropriate factors to consider include whether there is a family relationship between the owner and the driver and whether the owner has a duty to support the driver"). It also neglects to consider that Kaitlin, Mr. Wards' granddaughter, was staying over for the weekend, just

10

as she did "about every weekend," and that Kaitlin turned over control of the ATV to Maykayla. See Strine, 323 S.W.3d at 491 ("even though we conclude that Plaintiff's negligent entrustment claim against Father properly was dismissed, this does not mean that Father, as owner of the vehicle, could not have been held vicariously liable under agency principles for Son negligently entrusting the vehicle to [a friend]."). There is a question of fact as to whether Tye was negligent and sped off on an ATV owned by Mr. Ward, thereby prompting Maykayla to follow.

Third, Defendants rely on the decisions of the Tennessee Court of Appeals in Redding, Gray v. Amos, 869 S.W.2d 925, 926 ( Tenn. Ct. App. 1993), and Woodfin v. Insel, 13 Tenn. App. 493 (1931) for the proposition that the family purpose doctrine does not apply where specific permission must be sought before a vehicle is used. However, a more recent decision from that court canvassed the law, discussed Redding and Gray, and "conclude[d] that the correct statement of the law in Tennessee with respect to this matter . . . is that although the fact that the driver must obtain special permission may suggest that the vehicle is not maintained by the owner for the pleasure and comfort of the owner's family, this fact is not conclusive and does not necessarily preclude the application of the family purpose doctrine." Johnson v. Steverson, 2000 WL 1285282, at *4 (Tenn. Ct. App. Aug. 30, 2000). While Johnson is an unpublished decision, its conclusion, as that court noted, is in keeping with the Comment to the Tennessee Pattern Jury Instructions, and Driver v. Smith, 339 S.W.2d 135, 139 (1959), which held "that the requirement of [the parents] that their daughter have special permission each time she used the automobile has no bearing on the purpose for which the car was kept and furnished but related only to their general parental supervision of a teen-age daughter[.]" Driver, 339 S.W.2d at 139 ; see also Anderson v. Mason, 141 S.W.3d 635, 639 (Tenn. Ct. App. 2003) ("The fact that [defendant's] son had to get special permission before using the

vehicle does not remove the vehicle from the general applicability of the family purpose doctrine.").

In its reply brief, Defendants also argue that Plaintiffs have failed to cite any "Tennessee case in which a court has held that the owner of a motor vehicle is liable, under the Family Purpose Doctrine, to a negligent driver, for that driver's injuries in connection with an accident." (Docket No. 79 at 3, emphasis in original). That may be so, but whether Maykayla was negligent is itself a question of fact for the jury to determine.

### D. "Ward Construction" and "Shelaena Ward. d/b/a Ward Construction" as Defendants

Defendants move to dismiss any claims against "Ward Construction" because it is a sole proprietorship, and any claims against "Sheila Ward d/b/a Ward Construction" because Ward Construction is not a marital asset. In response, Plaintiff "agree[s] that 'Ward Construction' and 'Shelaena Ward d/b/a Ward Construction' are not proper defendants." (Docket No. 74 at 3). Accordingly the claims against both purported entities will be dismissed.

### E. Emotional Distress by Mrs. Gummo

Plaintiff concedes that Ms. Gummo's claim for the negligent infliction of emotional distress is barred by Eskin v. Bartee, 262 S.W.3d 727, 739 (Tenn. 2008) because she did not see the accident, nor did she see her daughter at the accident scene before it had been materially altered. Accordingly, this claim will be dismissed as well.

### III. MOTION TO STRIKE

Plaintiff's Rule 26 expert witness Joseph Stidham is expected to testify that a cable on the left hand brake, which can be used to activate the rear brake, was sticking and difficult to pull. Defendants contend that the issue regarding his testimony "simply boils down to whether the brake cable that connects the left brake handle to the rear brakes was sticking prior to the accident and

12

whether this condition had anything to do with the accident." (Docket No. 71 at 24).

In their Motion, Defendants argue that "Mr. Stidham has never worked in the ATV industry, does not have any formal training in ATV maintenance or repair, is not an expert in ATV design and has never taken any courses specific to ATVs." (Id.). In response, Plaintiff points out that Mr. Stidham is a former Kentucky State Trooper and is "a trained advanced reconstruction expert." (Docket No. 78 at 2). He has been qualified as an expert witness in numerous state and federal court case, including ATV cases. Plaintiff also assert Mr. Stidham "is an expert in the performance and handling of ATVs," and "has thirty-five years of experience operating ATVs." (Id.). Moreover, Mr. Stidham visited the accident scene, inspected the ATV, and personally tested the brakes in conjunction "with a qualified Honda mechanic, Shannon Woods," who "co-signed Stidham's expert report."

It is not clear that Defendants are moving to strike on the grounds that Mr. Stidham is not qualified by training or experience to offer an expert opinion in this case. To the extent that they are, the Court will exercise its gatekeeping function by holding a Daubert hearing prior to allowing Mr. Stidham to testify before the jury. See Pride v. BIC Corp., 218 F.3d 566, 578 (6th Cir. 2000) ("under Daubert and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case").

The real bone of contention appears to be that Mr. Stidham's proffered testimony allegedly contradicts other evidence in the record. In this regard, Defendants argue that Maykayla's "testimony directly contradicts Stidham's opinion" because when "she went to apply the left (rear)

and right (front) hand brakes and the brakes did not work at all" and "she doe not remember ever having any problem with the brakes on that ATV." (Docket No. 24 at 71, emphasis in original). They also assert that Kaitlin "had extensive experience driving" the ATV, "did not experience any problems with the operation of the ATV," and that, even though "it was her habit to brake using both brake handles (left and right)[,] she did not notice anything unusual with the operation of the brake handles on the evening of the accident." (Id. at 25-26). Moreover, "neither Shelaena Ward nor Robert Ward had any problems in the operation of Shelaena's ATV." (Id. at 26).

Defendants' portrayal of the facts neglects to consider that there is some deposition testimony in the record that the brakes on the ATV "squeaked" and had "locked-up" in the past. Regardless, "[e]xpert testimony is not inadmissible simply because it contradicts eyewitness testimony," but rather is only "inadmissible when the facts upon which the expert bases his testimony contradict the evidence." Greenwell v. Boatwright, 184 F.3d 492, 497 (6th Cir. 1999).

Recently, in Lee v. Smith & Wesson Corp., 760 F.3d 523 (6th Cir. 2014), the Sixth Circuit held that it was error to exclude an expert's opinion that a gun "was defective in design and manufacture because it could be cocked and fired with the pull of the trigger while the cylinder was not closed and locked," even though plaintiff had testified "that he closed the cylinder, locked it into place, cocked the hammer, pulled the trigger, and fired[.]" Id. at 526. This was because rule in "'federal practice is that a party is not precluded from proving his case by any relevant evidence, even though that evidence may contradict the testimony of a witness previously called by him.'" Id. (quoting Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255, 260 (6th Cir. 1961). Thus, and not withstanding plaintiff's testimony to the contrary, the expert could opine "that the cylinder was open when the gun was fired." Id.

14

In reaching its conclusion, the Sixth Circuit observed:

> It is true that expert testimony should be excluded if it relies on facts that no jury could accept, or relies on the rejection of facts that any jury would be required to accept. Thus we qualified our holding in Greenwell by explaining that "[e]xpert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence." [Greenwell, 184 F.3d at] 497. We explained that, for parties opposing the expert testimony "to succeed on this issue, they would have had to present facts that plainly contradict the physical evidence upon which the expert based his theory of the accident." Id. at 498.

Lee, 760 F.3d at 527.

Defendants have not shown that Mr. Stidham's opinion is based on facts that no jury could accept. Nor have they presented facts that clearly contradict Mr. Stidham's conclusion based upon his review of the scene and examination of the ATV's handbrake cable. Accordingly their Motion to Strike will be denied.[4]

## IV. CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment will be granted in part and denied in part.[5] Their Motion to Strike will be denied. An appropriate Order will enter.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[4] As a part of their Motion to Strike, Defendants argue that Mr. Ward "is also entitled to summary judgment as he had no duty to maintain the ATV since he was not the owner and owed no duty to the plaintiff with respect to the maintenance and upkeep of the ATV." (Docket No. 71 at 28). This argument is wholly underdeveloped, probably because genuine issues of material fact exist as to who owned the 2007 Honda TRX 420 TM/FX ATV and who was responsible for its maintenance. Summary judgment will be denied on Plaintiff's negligent maintenance claim.

[5] The Court notes that several of the claims it has allowed to go forward present close calls and the possibility exists that directed verdicts will be granted on some of those claims at the close of Plaintiff's proof. The Court urges Plaintiff's counsel to think through whether it is really necessary to pursue all of the remaining claims.

15